## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE
## CIVIL ACTION NO. 3:07CV-P260-M

**JOSEPH WAYNE ALLEN**                                                     **PLAINTIFF**

**v.**

**ARAMARK CORP.**                                                                   **DEFENDANT**

### MEMORANDUM OPINION

Plaintiff, Joseph Wayne Allen, filed this civil rights action under 42 U.S.C. § 1983 (DN 1) against Defendant Aramark Corporation. The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A.[1] For the reasons set forth below, the Court will dismiss all of Plaintiff's claims for failure to state a claim upon which relief can be granted, except his Fourteenth Amendment claims for damages for failure provide him with nutritionally adequate diabetic meals and for serving him contaminated food.

### I. SUMMARY OF COMPLAINT

According to Plaintiff's complaint Defendant Aramark is responsible for inmate food services and runs the commissary at the Louisville Metro Department of Corrections ("DOC"). During his stay as a pretrial detainee at DOC,[2] Plaintiff alleges that Defendant "violated my constitutional rights as protected by the constitution of the U.S. and the constitution of Ky. in as much as I have been deprived of my property without due process of law as enumerated in the Fifth and Fourteenth amendments of the U.S. Const., and the First and Eleventh secs. of the Ky.

---

[1] Pursuant to 28 U.S.C. § 1915A, "[t]he court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Thus, even though Plaintiff paid the $350.00 filing fee, the Court is still required to screen his complaint before service on Defendants. *Id.*

[2] Since commencing this action, Plaintiff has filed a notice of change of address indicating that he has been released from the DOC's custody (DNs 6-7).

Const., and deprived of equal protection under the law as enumerated in the Fourteenth amendment and subjected to cruel and unusual punishment as protected under the Eighth amendment of U.S. constitution." Plaintiff explains further that "since January 1, 2006, out of 1,494 meals I've received 63 meals that were warm and accurate. The balance of the 1,431 were deficient in the following, including but not limited to no diet meal at all, diet meal received contains products I'm allergic to, nutritional insufficient and very cold, and often contaminated with human feces, human spit, human pubic hairs and finger prints and smashed food." To his complaint, Plaintiff has attached numerous exhibits, which the Court has extensively reviewed. The exhibits reveal that Plaintiff's complaints against Aramark centers around five main issues: 1) Defendant charged Plaintiff for commissary items he did not receive thereby depriving him of his property; 2) Defendant charges too much for its commissary items; 3) the food Defendant prepares is poorly presented and cold most of the time; 4) Plaintiff, a diabetic, was prescribed a diet tray, but Defendant did not provide it to Plaintiff on several occasions, and that when provided the portions were inadequate to meet Plaintiff's caloric needs and the tray often contained foods (rice and turkey) that Defendant knew Plaintiff was allergic to; and 5) Plaintiff's food tray was often contaminated with human spit, feces, and urine. Plaintiff is seeking compensatory and punitive damages as well as injunctive relief.

## II. STANDARD OF REVIEW

When a prisoner initiates a civil action seeking redress from a governmental entity, officer or employee, the trial court must review the complaint and dismiss the action, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28

U.S.C. §§ 1915A(b)(1). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, --U.S.--, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65. Additionally, even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.*

### III.  ANALYSIS

**A.  Fifth Amendment Claims**

The Fifth Amendment of the United States Constitution provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. CONST. amend. V.

It appears that Plaintiff is attempting to rely on the Due Process Clause of the Fifth Amendment. However, it circumscribes only the actions of the federal government. *See, e.g.,*

3

*Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977). Here, the actions of municipal, not federal, officials are at issue. As such, the Court will dismiss the Fifth Amendment claims.

**B.     Eighth Amendment**

The Eighth Amendment of the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend VIII. The Eighth Amendment "was designed to protect those convicted of crimes." *Ingraham v. Wright*, 430 U.S. 651, 664 (1977). Because the injuries alleged by Plaintiff occurred while he was a pretrial detainee, his reliance on the Eighth Amendment is misplaced, and the Court will dismiss his Eighth Amendment claims. The Court will instead consider his cruel and unusual claims under the Fourteenth Amendment Due Process Clause, which provides pretrial detainees a right to be free from cruel and unusual punishment that is analogous to the Eighth Amendment rights of convicted prisoners. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).

**C.     Section 1 of the Kentucky Constitution**

Section 1 of the Kentucky Constitution provides:

> All men are, by nature, free and equal, and have certain inherent and inalienable rights, among which may be reckoned:
>
> First: The right of enjoying and defending their lives and liberties.
> Second: The right of worshipping Almighty God according to the dictates of their consciences.
> Third: The right of seeking and pursuing their safety and happiness.
> Fourth: The right of freely communicating their thoughts and opinions.
> Fifth: The right of acquiring and protecting property.
> Sixth: The right of assembling together in a peaceable manner for their common good, and of applying to those invested with the power of government for redress of grievances or other proper purposes, by petition, address or remonstrance.
> Seventh: The right to bear arms in defense of themselves and of the State, subject to the power of the General Assembly to enact laws to prevent persons from carrying concealed weapons.

4

KY. CONST. § 1. However, this section of the Kentucky Constitution does not give way to a private cause of action. *See Taylor v. Univ. Med. Ctr., Inc.*, No. 3:03CV-502-H, 2005 U.S. Dist. LEXIS 7269, at *8 (W.D. Ky. Apr. 26, 2005) ("There is no private cause of action under Section 1 of the Bill of Rights in the Kentucky Constitution."); *Welch v. Gill*, No. 5:03CV-73-R, 2006 U.S. Dist. LEXIS 14052, at *12 (W.D. Ky. Mar. 28, 2006) ("The Plaintiff may not bring a private cause of action against the Defendants under Section 1 of the Kentucky Constitution.") (citing *Baker v. Campbell County Bd. of Educ.*, 180 S.W.3d 479, 482-83 (Ky. App. 2005)).

**D.        Section 11 of the Kentucky Constitution**

Section 11 of the Kentucky Constitution provides:

> In all criminal prosecutions the accused has the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor. He cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land; and in prosecutions by indictment or information, he shall have a speedy public trial by an impartial jury of the vicinage; but the General Assembly may provide by a general law for a change of venue in such prosecutions for both the defendant and the Commonwealth, the change to be made to the most convenient county in which a fair trial can be obtained.

KY. CONST. § 11. This section deals with the accused's rights at trial. Plaintiff does not explain how Defendants' alleged actions violated this section, and the Court has carefully reviewed Plaintiff's complaint and cannot find any allegations that would establish a violation of Section 11 of the Kentucky Constitution. Accordingly, the Court will dismiss this claim.

**E.        Injunctive Relief**

Since filing this action, Plaintiff has been transferred/released from the DOC's custody (DNs 6 & 7). An inmate's claim for injunctive relief regarding the conditions of his confinement becomes moot due to the inmate's release from confinement or transfer to another

facility. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (finding inmate's request for injunctive relief moot as he was no longer confined to the institution where the alleged wrongdoing occurred). Here, it is clear that Plaintiff would derive no benefit from granting the requested injunctive relief. Accordingly, because Plaintiff's claims for injunctive relief have been mooted by his release, the Court will dismiss them.

**F.     Remaining Claims**

This leaves Plaintiff's 42 U.S.C. § 1983 claims that Defendant's conduct as alleged violated Plaintiff's procedural and substantive rights under the Due Process Clause of the Fourteenth Amendment.

**1.     Defendant's refusal to refund money it allegedly took for commissary items Plaintiff did not receive**

Plaintiff's claim falls within the purview of the Fourteenth Amendment's protection, which provides that the state may not deprive a person of his property without due process of law. However, the Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), rev'd on other grounds by, *Daniels v. Williams*, 474 U.S. 327 (1986). An inmate may, however, bring a due process claim without showing that the state possesses an adequate postdeprivation remedy where the state employee deprived the prisoner of property, pursuant to "an established state procedure." *Id.* at 534. In those circumstances, the Supreme Court opined that the state can provide a predeprivation hearing. *Id.* Yet, under this rationale merely because the individual employee himself may foresee the intentional deprivation, his foresight alone is simply insufficient to hold the state itself liable. Rather, "[t]he controlling inquiry is solely whether the state is in a position to provide for

predeprivation process." *Id.* The Sixth Circuit has, thus, held that to prevail on a procedural due process claim, a plaintiff must 1) demonstrate that he is deprived of property as a result of established state procedure that itself violates due process rights; or 2) prove that the defendants deprived him of property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss. *See Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991). An inmate has the burden of pleading and proving that the state remedies for redressing the wrong are inadequate. *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir.1983). Kentucky's statutory remedy for such losses has been deemed adequate. *Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).

Here, Plaintiff failed to meet his burden. He does not allege that the deprivation occurred as a result of an established policy. Rather his claim appears to be that Defendant incorrectly charged him for commissary items he did not receive on a few isolated occasions. Additionally, while he claims that Defendant intentionally deprived him of property without due process, he fails to show that he does not possess an adequate postdeprivation remedy to redress this wrong. Plaintiff has failed to state a cognizable claim under either theory of recovery. The Court will, therefore, dismiss his claims premised on the deprivation of his property.

      **2.**    **Overcharging for commissary items**

Plaintiff alleges that Defendant charges too much for commissary products such as food and personal hygiene items. In support of this argument, Plaintiff has attached several commercial sale advertisements showing the commissary products that Defendant sells can be purchased cheaper at retail outlets like Kroger and Rite Aid Pharmacy. However, "[a]n inmate has no constitutionally protected right to purchase food or other items as cheaply as possible through the prison commissary." *Pepper v. Carroll*, 423 F. Supp. 2d 442, 449 (D. Del. 2006);

7

*see also Daniels v. Bowles*, No. 3:03-CV-1555-D, 2004 U.S. Dist. LEXIS 22283 (N.D. Tex. Nov. 2, 2004) ("Overcharging for commissary items does not independently violate any constitutional right and thus fails to state a claim under 42 U.S.C. § 1983."); *Rodriguez v. Swanson Servs. Corp.*, No. 01-117-P-C, 2001 U.S. Dist. LEXIS 6328 (D. Me. May 11, 2001) (same). Although such a claim perhaps could be viable in the context of an alleged deprivation of the necessities of life if the commissary food was the only food available and if it was priced so high that inmates were unable to afford it, this is clearly not the case here. Plaintiff received regular meals from the jail, and the commissary was provided only as a supplement or additional benefit to Plaintiff. It was not the primary or sole source of his nutrition. The fact that Plaintiff could not purchase supplemental or extra food at a price he found acceptable does not state a constitutional violation. As such, the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

### 3. Cold, poorly presented food

It is well-settled that prisoners have a right to adequate food. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, there is no constitutional right that the food provided must be tasty or even appetizing. The Sixth Circuit has held that while a prisoner is constitutionally entitled to food that is nutritionally adequate for the maintenance of normal health, complaints about "the preparation or quality of prison food" are generally "far removed from Eighth Amendment concerns." *Cunningham v. Jones*, 567 F.2d 653 (6th Cir. 1977); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 404 (6th Cir. 1999) (Suhrheinrich, J. concurring in part and dissenting in part) (collecting cases discussing cold food served in prison and observing that "cold food apparently is an ordinary incident in prison life"). While the appearance and temperature of Plaintiff's food might have been less than desirable, it does not rise to the level of a constitutional violation. As such, this claim will be dismissed.

8

## 4. Failure to provide proper diabetic meals

From a review of Plaintiff's complaint and its attachments, it appears that Plaintiff was diagnosed as a diabetic during his incarceration at DOC and was placed on a special diabetic diet. It also appears that Plaintiff is allergic to rice and turkey. Defendant was made aware of both Plaintiff's need for a diabetic diet and his food allergies. However, Plaintiff alleges that Defendant repeatedly failed to provide Plaintiff with a diet tray, provided him with a tray containing the foods he was allergic to, and/or provided him with a tray that was insufficient to meet his daily caloric needs. It also appears that while incarcerated, Plaintiff had trouble keeping his diabetes in check. Plaintiff explains: "My sugar still runs between 300-500 constantly, my feet and legs swell, constantly have problems with my penis getting red and irritated and painful and I problems with my vision."

In *McCabe v. Aramark Food Servs.*, No. 01 C 5429, 2002 U.S. Dist. LEXIS 264 (N.D. Ill. Jan. 8, 2002), a prisoner was diagnosed with diabetes and placed on a diabetic diet. Although the food services group was advised of the prisoner's diet and assured him that he would receive diabetic meals, the prisoner did not receive his diet tray. *Id.* at *2. As a result, the prisoner alleged that was unable to consume the meals provided to him, which put him at a substantial risk of developing medical complications arising from his diabetes. *Id.* The court held that a diabetic's need to control his diet is a sufficient medical need for the purposes of Eighth Amendment analysis. *Id.* Additionally, the court found that the food services group was aware of the prisoner's medically prescribed diabetic meals and failed to provide him with food that would meet his dietary requirements. *Id.* at *5.

Taking Plaintiff's allegations as true, the Court concludes that Plaintiff's Fourteenth Amendment substantive due process claim that Defendant failed to provide him with nutritionally adequate meals suitable for his medical condition should proceed for further

9

development.

### 5. Contaminated food

Plaintiff alleges that over the course of a year, Defendant repeatedly served him meals that had been contaminated with feces, urine, and spit. Prisoners must be provided with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to [their] health and well being" when they consume it. *See, e.g., Ramos v. Lamm*, 639 F.2d 559, 570-71 (10th Cir.1980). "Depriving an inmate of food or serving him contaminated food states a claim for a violation of the Eighth Amendment." *Thompson v. Mich. Dep't of Corr.*, No. 99-2076, 2000 U.S. App. LEXIS 27046 (6th Cir. Oct. 20, 2000). In *Eaddy v. Foltz*, 782 F.2d 1041 (6th Cir. 1985), the Sixth Circuit held that a district court prematurely dismissed a complaint which alleged persistent contamination of prison food because the condition "depending upon [the] severity or pervasiveness might constitute an Eighth Amendment violation." Accordingly, the Court will allow Plaintiff's Fourteenth Amendment substantive due process claim that Defendant repeatedly served him contaminated food to proceed for further development.

### IV. CONCLUSION

In conclusion, the Court is dismissing all of Plaintiff's claims for failure to state a claim upon which relief can be granted, except his Fourteenth Amendment claims for damages for failure provide him with nutritionally adequate diabetic meals and for serving him

contaminated food.

        The Court will enter Orders consistent with this Memorandum Opinion.

Date:

cc:      Plaintiff, *pro se*, 5510 Eelgrass Court, Apt 5, Louisville, KY 40258
           Plaintiff, *pro se*, 51 W. Main St., Tavares, FL 32278
           Defendant
4414.008